**Daniel M. DEARMAN,**
**Plaintiff-Appellant,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
**Defendant-Appellee.**

No. 83–4145.

United States Court of Appeals,
Fifth Circuit.

March 19, 1984.

Denton, Persons, Dornan & Bilbo, Donald C. Dornan, Jr., Biloxi, Miss., William C. Walker, Jr., University, Miss., for plaintiff-appellant.

White & Morse, D. Knox White, Lee N. Perry, Gulfport, Miss., for defendant-appellee.

Before CLARK, Chief Judge, GARZA and JOLLY, Circuit Judges.

PER CURIAM:

This case is on appeal from a district court's grant of summary judgment in favor of the Prudential Insurance Co. of America (Prudential). The issue is whether Prudential may terminate an employee's coverage under a group health insurance plan, without notice to the employee, for the failure of the employer to pay to Prudential the premiums it had collected from its employee. We hold that it may not.

Daniel Dearman began employment with G & S International, Inc. (G & S) on July 14, 1981. He enrolled in a group medical insurance policy plan issued to G & S by Prudential. The policy's issuance date was September 15, 1980. G & S paid all premiums on the policy until May 15, 1981. Thereafter, G & S failed to pay to Prudential the premium due on June 15, 1981. It continued, however, to deduct group premiums from Dearman's salary. The policy does not require that a covered employee make any specific contribution to the cost of his or her coverage nor does it address

the method of collection of premiums or the effect of payment of a premium by Dearman to G & S. However, it does provide that if G & S requires contribution from its employees, the failure to make such a contribution will terminate the employee's coverage. Prudential notified G & S on September 22, 1981, that its policy had terminated as of midnight on July 15, 1981, the expiration of the contractual thirty-one day grace period.

In October, 1981, Dearman filed a claim under the policy when his wife, a covered dependent under the policy, was hospitalized. On February 22, 1982, Prudential sent Dearman a letter denying his claim because coverage had been terminated due to G & S's failure to make the premium payments. This letter was Dearman's first notice of the termination.

Dearman sued Prudential, seeking compensatory damages under the group insurance policy, as well as compensatory and punitive damages for Prudential's failure to pay.

The trial court granted summary judgment for Prudential. Without citation of authorities, the court reasoned that the insurance policy terminated on July 15, 1981, for non-payment of premiums; that G & S was not Prudential's agent; and that Prudential had no duty to notify G & S employees that the policy had terminated. This appeal followed.

Dearman argues that G & S was Prudential's agent to collect premiums from him and remit them to the insurer under MISS. CODE ANN. § 83–17–1 (1972)[1] and therefore that his payment of premiums to G & S constituted payment to Prudential. Prudential argues the opposite based principally on *Magee v. Sun Life Assurance Co. of Canada*, 182 Miss. 287, 180 So. 797 (1938).

While the policy is silent as to the effect of the employer-employee group policy method of collecting and remitting premium payments, § 83–17–1 is not. Under the literal wording of the statute, when G & S collected premiums from employees it became Prudential's agent for transmittal of those funds to Prudential. The risk of loss, error or wrongdoing by G & S with regard to those funds shifted to Prudential. G & S did, in fact, transmit some premiums to Prudential.[2] It also performed other functions, such as record-keeping, in the administration of the group insurance plan. Prudential recognized that employees of G & S were its insureds and evidenced this by issuing individual certificates of coverage to G & S for delivery to its employees.

Since § 83–17–1 made G & S Prudential's statutory agent to receive and transmit Dearman's premiums, Prudential could not terminate Dearman's coverage for nonpayment of premiums unless it gave notice to Dearman that his premiums had not been properly handled by G & S. Prudential had the right under its group policy agreement

1. *Every person* who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or *who shall* receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, *collect,* or transmit *any premium of insurance,* or make or forward a diagram of any building, or do or perform any other act or thing in the making of consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person,

shall be held to be the agent of the company *for which the act is done* or the risk is taken *as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy of contract.* Such person knowingly procuring, by fraudulent representations, payment or the obligation for the payment of a premium of insurance shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year.
(Emphasis supplied)

2. In view of the actual agency created by statute, we need not reach the effect of the apparent authority of G & S to continue to act for Prudential in the collection of premiums. *See* Restatement of Agency Second § 129.

with G & S to inspect the company's records. From this inspection it could have determined the names and addresses of employees to whom any such notice of nonpayment was due.

In *Magee,* the Mississippi Supreme Court, without any reference to the identical predecessor statute then in effect, upheld the denial of group life insurance coverage to a railroad employee after the Railroad notified the insurer that the employee had "ceased to be employed as from the 31st day of October, 1934, and the assurance of said employee is accordingly cancelled." Magee claimed he was entitled to notice of cancellation and that the Railroad's refusal of a tender of premium made it unnecessary for him to pay further premiums to keep his policy in force. The court held Magee was bound by the provisions of the policy which did not provide for notice of cancellation to employees who had ceased to be employed. It also held the alleged tender of premium to the Railroad would not bind the insurer who previously had been notified by the Railroad that Magee's policy had been cancelled. The court's latter holding was premised on the lack of an agency relationship between the Railroad and the insurer. Since the court did not cite or discuss the statute, we can only surmise that it determined that Magee's termination as an employee was sufficient to apprise him of the loss of his rights under the Railroad's employee group coverage policy.

Whatever the basis for the Court's reasoning may have been in *Magee,* we cannot interpret that decision to be an unexplained repeal of the plain words of the statute which make G & S the agent of Prudential for the purpose of properly remitting premiums collected from Dearman in today's case.

The summary judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

**REVERSED and REMANDED.**