Frank P. BARHONOVICH,
Jr., Plaintiff–Appellant,

v.

AMERICAN NATIONAL INSURANCE
CO., Defendant–Appellee.

No. 90–1907.

United States Court of Appeals,
Fifth Circuit.

Nov. 27, 1991.

Joe Sam Owen, Owen, Galloway & Clark, Gulfport, Miss., for plaintiff-appellant.

John Harral, White & Morse, Gulfport, Miss., for defendant-appellee.

Before CLARK, Chief Judge, and JONES, Circuit Judge, and PARKER, District Judge.*

* Chief District Judge, of the Eastern District of Texas, sitting by designation.

CLARK, Chief Judge:

Frank Barhonovich appeals the district court's entry of summary judgment dismissing his claim against American National Insurance Company for negligence, breach of contract and conversion. Finding no error, we affirm.

## I.

The summary judgment record shows the following undisputed facts: In 1970 American National Insurance Company issued a $20,000 life insurance policy to Frank Barhonovich. The policy required on its face that Barhonovich pay a monthly premium of $45.52 for life. After the policy had been in effect for over fifteen years, Randall Broussard, the local field agent of American National, began collecting Barhonovich's monthly premiums. It was Broussard's duty to receive monthly premium checks from insureds, credit them to the account of the individual insured, and transmit the checks to the district office for deposit and processing.

Broussard initiated a scheme in May 1985 whereby he did not credit the premiums paid by Barhonovich to his American National insurance policy. Instead, Broussard credited the payments to policies of other insureds. Broussard was merely servicing Barhonovich's account and did not receive a commission from these payments. In order to earn a commission, maintain active policies of his other insureds, and keep his lapse ratio down, Broussard falsified the premium collection records to show Barhonovich's payments were paid on other policies in which he would earn commissions. Broussard engaged in this scheme without the knowledge or consent of any other officer, agent, or employee of American National.

Because Broussard was falsifying the premium records, Barhonovich did not receive credit from American National for the premiums he was actually paying. In 1985, American National's records indicated that the policy had lapsed for nonpayment of premiums. American National

asserted that its home office sent several lapse notices directly to Barhonovich in 1985. Barhonovich denied he received any lapse notice.

After he had diverted Barhonovich's premium payments to other insureds' policies for two years, Broussard told Barhonovich that the cash value of his policy was sufficient to service all future monthly premiums and no more payments were required. Broussard testified he purposely misled Barhonovich in an attempt to cover his diversions of Barhonovich's premiums. Broussard told this to Barhonovich because he planned to leave the company and knew that his scheme would be discovered if Barhonovich attempted to pay any more premiums to a replacement agent. In reliance on Broussard's statement, Barhonovich discontinued premium payments.

In December 1988, Barhonovich asked one of American National's local agents about the cash value of his life insurance policy. He was told that the policy had lapsed in May 1985 for non-payment of premiums. The investigation provoked by Barhonovich's inquiries disclosed Broussard's falsification of the premium records and diversion of premiums.

American National offered to return all premiums paid to Broussard or to reinstate Barhonovich's policy and credit it with all premiums paid to Broussard. American National further offered to bring the policy current without a medical examination or change in premium or benefits if Barhonovich paid all premiums which would have come due after the payments to Broussard ceased. Barhonovich rejected American National's offers, which still remain open.

## II.

■ Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir.1990). To ascertain whether genuine issues of material fact are present in this Mississippi based diversity action, we look to the substantive law of Mississippi. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 177–78 (5th Cir.), *reh'g denied*, 920 F.2d 259 (1990). We view the evidence in the light most favorable to the nonmoving party, Barhonovich. *Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir.), *reh'g denied*, 918 F.2d 484 (1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989).

The contract, conversion and negligence issues presented turn on whether Broussard's 1985 representation that Barhonovich's policy was "paid up" implicated any material fact issues not resolved by the summary judgment record.

■ Barhonovich maintains that he does not have to comply with the terms of the policy as written because American National is bound by the actions of its agent which modified the insurance contract and terminated any obligation to pay premiums. "The general law of agency applies to insurance companies' relationships with their agents." *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss.1987); *Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 766 (Miss.1985); *Gulf Guaranty Life Ins. Co. v. Middleton*, 361 So.2d 1377, 1382 (Miss.1978). Under Mississippi law, American National is a principal which is bound by the actions of its agent Broussard within the scope of that agent's real or apparent authority. *Lamar Life Ins. Co.*, 513 So.2d at 888.

An agent may bind his principal through either actual or apparent authority. The summary judgment evidence demonstrates that American National did not authorize Broussard to falsify the premium documentation, divert Barhonovich's premiums, or misrepresent to Barhonovich that he was no longer required to pay premiums. Broussard's deposition testimony that American National did not authorize, consent, encourage, or ratify his fraudulent activities is uncontradicted. The insurance policy expressly denied Broussard the authority to relieve Barhonovich of his obligation to pay monthly premiums for life.

■ Therefore, our analysis of whether American National is bound by the unauthorized misrepresentation of its agent shifts to Broussard's apparent authority. "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Lamar Life Ins. Co.*, 513 So.2d at 888. To recover under Mississippi law, Barhonovich must prove the following three elements of apparent authority: 1) acts or conduct on the part of the principal indicating the agent's authority, 2) reasonable reliance on those acts, and 3) a detrimental change in position as a result of such reliance. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1181 (Miss.1990); *Lamar Life Ins. Co.*, 513 So.2d at 888; *Gulf Guaranty Life Ins. Co.*, 361 So.2d at 1383. In Mississippi, a person such as Barhonovich who knows he is dealing with an agent must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of the agent's authority. *Consumers Credit Corp. of Miss. v. Swilley*, 243 Miss. 838, 138 So.2d 885, 889 (1962).

Barhonovich argues that the issue of apparent authority is relevant to Broussard's misrepresentations, and is a fact issue which makes summary judgment inappropriate. We disagree. All three elements required to prove apparent authority are missing.

First, both parties agree that American National did not make any representation to Barhonovich which would authorize Broussard's statements.

Second, Barhonovich's reliance on Broussard's misrepresentations cannot be deemed reasonable under the circumstances. The insurance policy contract issued to Barhonovich in 1970 provided on its face that the premium paying period was for "LIFE." It also provided that only the president, vice-president, or secretary of American National had authority to modify the policy, extend the time for payment of any premium, or waive any forfeiture or any of the Company's right or requirements. In January 1985, Barhonovich requested a loan of the full cash value of his policy and received a check for $5,697.87. At the time of Broussard's representations, Barhonovich had not repaid any of the principal amount of the loan to American National. In the face of the limitations on Broussard's authority in the insurance contract and the unpaid loan, Barhonovich could not reasonably assume that the cash value of his insurance policy was sufficient to pay his remaining monthly premiums. In failing to determine either the agent's authority or the accuracy and truthfulness of his representations, Barhonovich exercised neither reasonable diligence nor prudence.

Third, Barhonovich asserts that he detrimentally changed his position in reliance on Broussard's authority by ceasing the payment of premiums. Nothing in the proof, however, demonstrates that Barhonovich was harmed by his failure to pay the premiums. No evidence indicates Barhonovich's reliance on Broussard's statements caused him to be currently financially unable to pay the monthly premiums which are past due. Nor does the record show Barhonovich would have continued paying premiums, or would have cancelled the policy and purchased one elsewhere. The record reflects no detrimental change in position in reliance on Broussard's misrepresentations. When told no future premiums were due, Barhonovich simply stopped paying premiums without making any change of position.

Since Broussard did not have the actual or apparent authority to modify the policy's terms, American National's offer to allow him to pay the past-due premiums he has never paid if he desires to keep the policy in effect tenders more than his legal due.

III.

■ The basic terms of the insurance contract are that if Barhonovich pays the specified monthly premium, American National will pay the face amount of the policy to Barhonovich's beneficiaries upon his

death. Barhonovich argues that American National is liable for breach of this contract because its agent did not credit his account and allowed his policy to lapse. Under the facts in this record, this contract could not be breached until Barhonovich's heirs submit a claim and American National improperly denies it or until American National refuses to credit premiums paid. Neither circumstance has occurred. American National has never disputed that Barhonovich is entitled to receive credit for premiums he paid to Broussard. American National's offer to reinstate the policy and credit Barhonovich for the premiums paid tendered him his full contract rights. If Barhonovich did not wish to reinstate the subject policy, American National offered to refund to Barhonovich all premiums he had paid which had been improperly diverted. American National has not breached its contract with Barhonovich.

■ Payment of a premium to an agent effects payment to the insurance company. MISS.CODE ANN. § 83–17–1; *American Cas. Co. v. Whitehead*, 206 So.2d 838, 844 (Miss. 1968). When Barhonovich paid Broussard, Mississippi law recognized that Barhonovich had paid American National. Broussard's subsequent acts have no effect on this payment. *American Cas. Co.*, 206 So.2d at 844; *Dearman v. Prudential Ins. Co. of Am.*, 727 F.2d 479, 480 (5th Cir. 1984); *Soso Trucking, Inc. v. Central Ins. Agency, Inc.*, 236 So.2d 398, 405 (Miss. 1970). Once Barhonovich delivered his check to Broussard he no longer had an interest in it. Broussard could not convert property of Barhonovich because the check had served its intended purpose of paying his premium. *See American Cas. Co.*, 206 So.2d at 844; *Dearman*, 727 F.2d at 480.

■ American National was not guilty of negligence in failing to credit Barhonovich's account, in failing to handle his policy properly, or in allowing him to remain uninsured for over two years. Barhonovich asserts that he suffered mental anguish when he learned of Broussard's actions and that American National had cancelled his policy. It is undisputed, however, that Barhonovich suffered no physical manifestation of his alleged mental anguish and did not see a physician. Under Mississippi law, emotional distress without physical bodily injury is not compensable. *Sears, Roebuck & Co. v. Young*, 384 So.2d 69, 72 (Miss.1980).

Barhonovich argues that this reasoning does not control his claim because Mississippi law allows punitive damages for mental distress without a showing of physical injury if the mental distress was the result of gross negligence. *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397, 1401 (5th Cir.1986); *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss.1981). Barhonovich contends that Broussard's actions constitute gross negligence and warrant the imposition of punitive damages on American National.

■ Punitive damages may be awarded against an insurance company when the company willfully and maliciously breaches its contract with the insured. *Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239 (Miss.1977). The breach must be either wanton and malicious or must be associated with an intentional wrong, insult, abuse or such gross negligence as to constitute an independent tort. *Lincoln Nat. Life Ins. Co. v. Crews*, 341 So.2d 1321, 1322 (Miss.1977); *New Hampshire Ins. Co. v. Smith*, 357 So.2d 119, 121 (Miss.1978). Neither is present here.

■ Broussard's misrepresentations cannot be the basis for awarding punitive damages against American National. American National did not authorize Broussard to modify the contract. American National has not denied a claim under the contract. American National has not breached the contract. The record shows no negligence, much less gross negligence, on the part of American National. Broussard's acts can not be imputed to American National. American National did not ratify, encourage, or authorize Broussard's actions. Punishing American National would have no deterrent effect on Broussard.

The judgment of the district court is AFFIRMED.