**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 02-60010

Summary Calendar

_____


RUSSELL BARTON GREEN; BETTY M. GREEN,

                                    Plaintiffs-Appellants,


VERSUS


DENBURY RESOURCES; et al,

                                    Defendants,

            DENBURY RESOURCES

                                    Defendant-Appellee.



_____

Appeal from the United States District Court
For the Southern District of Mississippi, Jackson Division
_____

(4:00-CV-65-LN)

June 13, 2002


Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Denbury Resources, Inc. (Denbury) owns a mineral lease and an

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

easement to operate a pipeline over land belonging to Russell and Betty Green. The Greens have alleged that Denbury breached the easement contract by transporting "off-lease" saltwater through the pipeline on their property. They argue that the easement only allows Denbury to use the pipeline for transporting liquids that come from the Greens' land. The district court granted summary judgment in favor of Denbury, finding that it acted within its rights under the mineral lease when it used "off-lease" saltwater in its exploration efforts. We AFFIRM. Because the Mineral Lease gives Denbury the right to produce oil "in any manner whatsoever," and because the pipeline easement does not restrict Denbury's rights under the mineral lease, summary judgment was warranted.

## I.

This dispute involves a 328-acre plot of land on an oil field in southeastern Mississippi. In 1937, appellant Russell Green's grandfather, G. R. Green, sold an oil and gas lease over the plot to Gulf Oil Company ("the Green lease" or "the Mineral Lease"). The mineral lease granted Gulf Oil the exclusive right to use the land for producing oil, gas, sulfur and other minerals as well as the exclusive right to explore the land for oil and gas "in any manner whatsoever." The lease granted G. R. Green a 1/8 royalty interest in all oil produced on the land. Appellants Russell and Betty Green inherited this plot of land from G. R. Green as well

2

his rights under the mineral lease.[1]

Gulf Oil constructed at least four wells on the Greens' land during the late 1940s. Although the wells were initially productive, they eventually became depressurized and production slowed. Because there was no "active water drive" in the area, the naturally existing "trapped pressure" became depleted as oil was extracted from the wells. As a result, a substantial amount of recoverable oil was trapped underground because there was no pressure left to push the oil to the surface.

Chevron eventually acquired the production rights under the Green lease when it purchased Gulf Oil. In the mid 1990s, Chevron instituted a "secondary recovery operation" on the Green lease; it planned to replenish subsurface pressure by forcing saltwater into the inactive wells. The influx of water from the secondary recovery operation creates underground pressure and makes mineral extraction easier. Thus, with approval from the Mississippi State Oil and Gas Board, Chevron converted some of the oil wells on the Greens' property into saltwater injection wells and constructed pipelines to transport saltwater to the converted wells.

After purchasing the production rights from Chevron in 1998,

---

[1] The district court inaccurately stated that the Greens own no mineral interest in the land. G. R. Green sold his *royalty interest* in the land before the appellants inherited the property, so the appellants currently receive no royalties under the lease. The Greens do, however, own a ½ mineral interest in the land. This misstatement of fact is inconsequential to the disposition of this case on appeal.

Denbury continued the secondary recovery operation on the Greens' property. The Greens claim that at least some of the saltwater that Denbury used to repressurize the oil field came from outside of the Greens' property.[2] Denbury transported the saltwater to the injection wells using the pipeline on the Greens' property. Pursuant to a 1999 agreement between Denbury and the Greens ("the Pipeline Easement"), Denbury has an easement to operate the pipeline to transport oil, gas, saltwater, and other liquids. The Greens argue, however, that the Pipeline Easement only grants Denbury the right to transport liquids produced from the Green lease and other lands pooled with the Green lease. Therefore, the Greens contend that Denbury exceeded its rights under the Pipeline Easement when it used the pipeline to transport "off-lease" saltwater.

The Greens sued Denbury in Mississippi state court arguing that Denbury's transportation of "off-lease" saltwater violated the Pipeline Easement and gave rise to claims for trespass, nuisance,

---

[2] There is some question regarding whether Denbury has actually ever used "off-lease" saltwater in its recovery efforts. The Greens have identified no record evidence in their briefs indicating that off-lease liquids were used. Denbury's engineer in charge of operations on the Green lease stated in his affidavit that since May 1999, "the unit wells in the area of the Plaintiffs' lands have recovered more barrels of water than have been injected." He therefore concluded that "it is fair to say that most, if not all, water injected since May 1999, has come from the unitized area." But because this is an appeal of Denbury's motion for summary judgment, we must construe the evidence in the light most favorable to the Greens. Barhonovich v. Amer. Nat. Ins. Co., 947 F.2d 775 (5th Cir. 1991).

4

conversion, unjust enrichment, taking without due process of law, compensatory damages, and punitive damages. Denbury, which is a Texas corporation, removed the case to the Southern District of Mississippi. After a lengthy discovery period, Denbury filed a motion for summary judgment arguing that the Mineral Lease permits it to use "off-lease" saltwater in its production and exploration efforts and that the Pipeline Easement is not in conflict with the Mineral Lease. The district court granted the motion and the Greens now appeal that ruling.

## II.

"We review a district court's ruling on motion for summary judgment de novo, applying the same standards as those that govern the district court's determination." McKee v. Brimmer, 39 F.3d 94 (5th Cir. 1994). Summary judgment must be granted if the court determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To ascertain whether there are genuine issues of material fact in this Mississippi-based diversity action, we look to the substantive law of Mississippi. Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 177-78 (5th Cir. 1990). We must view the evidence in the light most favorable to the Greens, who are the nonmoving parties. Barhonovich v. Amer. Nat. Ins. Co., 947 F.2d 775 (5th Cir.1991).

## III.

5

On appeal, the Greens renew their argument that the Pipeline Easement prohibits Denbury from transporting any "off-lease" saltwater over the pipeline.[3] In pertinent part, the 1999 Pipeline Easement gives Denbury an easement over the Greens' property for:

> the constructing, maintenance, operations, inspecting, repairing and removing, in whole or in part, a pipeline and appurtenances thereto for the transportation of oil, petroleum products, gas, fresh water, saltwater, and other liquids or gaseous substances *produced from [the Greens'] lease or from those lands unitized or pooled therewith* in connection with [Denbury's] oil, gas and water operations on, under, over, upon, through and across the following described lands situated in Jasper County, Mississippi . . . .

(R. 501) (emphasis added). The Greens' position is that the above language restricts Denbury's right to use the pipeline only for transporting liquids that come from the Greens' property or from outside property under a common pooling agreement.

This position ignores, however, the explicit language in the Pipeline Easement that preserves Denbury's rights to produce and explore for oil under the Mineral Lease:

> It is understood and agreed between the parties hereto, that the signing of this agreement by [Denbury] does not waive any rights [Denbury] holds and owns by virtue of any oil, gas and mineral leases and other agreements, recorded or unrecorded; *said oil, gas and mineral leases and other agreements remain in full force*

---

[3] The Greens do not claim that Denbury has been negligent in its secondary recovery operation or that it has damaged the surface of the Greens' property. In fact, the Greens concede that Denbury has conducted a "textbook" secondary recovery operation. (R. 590). The Greens' sole complaint is that Denbury had no right to transport "off-lease" saltwater over the pipeline.

6

*and effect.*

(R. 502) (emphasis added). This "non-waiver clause" in the Pipeline Easement thus makes clear that Denbury retains its rights under the Mineral Lease, which gives Denbury broad discretion to produce and explore for oil "in any manner whatsoever." The Lease specifically provides:

> That the said Lessor . . . does hereby lease, demise and let unto said Lessee the tract of land hereinafter described with the exclusive right of exploiting the same for and producing oil, gas, sulphur and other minerals therefrom, and to that end also grants the exclusive rights and privileges of exploring in any manner whatsoever the said land for mineral indications, of drilling and operating thereon for oil, gas, sulphur and other minerals . . . .

(R. 398).

We interpret contracts under Mississippi law using the "four corners" doctrine; we exam the contract in its entirety and read its terms as would an ordinary layman. <u>Pursue Energy Corp. v. Perkins</u>, 558 So. 2d 349, 352 (Miss. 1990). In light of the Mineral Lease's provision that Denbury may explore for oil "in any manner whatsoever," we hold that Denbury did not breach the Pipeline Easement when it transported off-lease saltwater through the pipeline in its secondary recovery efforts. Denbury's motives for using the off-lease saltwater were legitimate; it sought to repressurize the field so that it could revive the nonproductive wells on the Greens' lease. The effort falls squarely within

7

Denbury's right and obligation to produce oil under the Mineral Lease. This is not a case where Denbury used the pipeline for a purpose unrelated to production, like transporting or depositing off-lease waste liquids. By its express language, the non-waiver clause in the Pipeline Easement preserves Denbury's right to produce and explore for oil under the Mineral Lease.

Although we decide this case on principles of contract interpretation, Mississippi courts have acknowledged the general principle that a mineral lessee may use the surface where reasonably necessary to extract minerals. Reynolds v. Amerada Hess Corp., 778 So. 2d 759, 762 (Miss. 2000) ("Long-established law in Mississippi provides that the severed mineral owner or lessee has the right to use the surface of the lands for all reasonable purposes to explore and drill for oil and gas and may use as much of the surface as is reasonably necessary to exercise its rights, but it cannot intentionally or negligently damage or use more of the land surface than is reasonably necessary in its mining operation."). Mississippi courts have also rejected the general proposition that a subsequent surface lease supersedes a mineral lessee's right to use as much of the surface as is reasonably necessary for mining. Id. at 762-64.

## III.

The agreements between Denbury and the Greens unambiguously give Denbury the right to explore for oil "in any manner

8

whatsoever."  Denbury's alleged use of off-lease saltwater to repressurize wells on the Green lease did not violate the Pipeline Easement because that agreement explicitly states that the Mineral Lease remains in "full force and effect."  We therefore AFFIRM the district court's summary judgment ruling.