909 So.2d 87 (2005)
Shronda HUTTON, Appellant
v.
AMERICAN GENERAL LIFE & ACCIDENT INSURANCE COMPANY, Appellee.
No. 2004-CA-00262-COA.
Court of Appeals of Mississippi.
May 24, 2005.
Rehearing Denied August 16, 2005.
*89 Meda B. Lindley, Ralph E. Chapman, Clarksdale, David R. Wade, attorneys for appellant.
Steven H. Begley, Kelly D. Simpkins, Jackson, attorneys for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. Shronda Hutton filed a complaint against American General Life & Accident Insurance Co. and its agent, A.Z. Vernon "Butch" Rains, II in the Circuit Court for the First Judicial District of Hinds County. Hutton averred that American General had breached a contract of life insurance in bad faith by failing to pay benefits due after the death of her alleged common law husband, Keon Perry.[1] Hutton also asserted a fraudulent misrepresentation claim against Rains and charged that Rains's fraud was attributable to American General under the doctrine of respondeat superior.
¶ 2. The court entered a final judgment granting summary judgment to American General; Rains remains before the court. Hutton appeals. She argues that the grant of summary judgment to American General was erroneous and that the court abused its discretion by striking the testimony of Hutton's expert witness, Kenneth Himes, the substance of which was that *90 American General denied Hutton's claim in bad faith.
¶ 3. We find that there was no evidence from which a reasonable jury could have concluded that a contract of life insurance arose between Hutton and American General or that American General was liable under the doctrine of respondeat superior. Therefore, we affirm the grant of summary judgment in favor of American General. Our conclusion that no contract of insurance could have arisen in this case means that no duty of good faith and fair dealing existed between the parties and, therefore, the question of the admissibility of Himes's expert testimony that American General acted in bad faith is moot.

FACTS
¶ 4. On August 10, 2000, Agent Rains visited Hutton and took her application for term life insurance on her own life in the amount of $100,000. Rains collected the first month's premium of $16.63 and gave Hutton a conditional receipt. Hutton signed a bank draft agreement authorizing American General to extract monthly premiums from her bank account. According to Hutton, Rains told her that temporary insurance was in effect upon her payment of the premium. Before Rains departed, Hutton expressed a desire to obtain life insurance for her alleged common law husband, Perry.
¶ 5. On the afternoon of August 18, 2000, Rains took an application for term life insurance on Perry in the amount of $100,000. The application named Hutton as the proposed policy owner and beneficiary. The application stated, "insurance shall take effect on the Policy Date shown in the policy if the first full premium has been paid within 31 days of the Policy Date," and disclaimed the agent's authority to bind American General by making representations not set out in the application. Rains collected an initial premium of $11.90 and Hutton signed a bank draft agreement authorizing American General to withdraw the monthly premiums on the fifteenth day of each month. Rains gave Hutton a conditional receipt. The conditional receipt stated, in pertinent part:
On this date, American General Life and Accident Insurance Company has received $11.90 for life insurance applied for on the life of KEON LATEDRICK PERRY. We agree to provide temporary insurance if: (1) the deposit is at least equal to one twelfth of the annual premium for the policy applied for: AND (2) all persons for whom application is made are insurable, in the opinion of the Company's authorized officers in Nashville, Tennessee, for the plan, insurance amount, and premium applied for under the Company's underwriting rules and practices on the date of this premium deposit and on the date of any required medical examination.... If temporary insurance exists, it will end upon delivery or tender of delivery of a policy or 60 days after the date of this receipt, if earlier. No sales representative has authority to change the terms and conditions of this receipt.
¶ 6. On September 12, 2000, Rains came to Hutton's residence with a policy on Hutton's life (the Hutton policy) and a policy on Perry's life (the Perry policy). Each policy consisted of a document containing the policy's terms and the application, which was attached and expressly made a part of the insurance policy. Rains gave Hutton the Hutton policy. According to Hutton, Rains retained possession of the Perry policy for the duration of the meeting. Rains explained both policies and stated that, due to Perry's driving record, American General had returned the Perry policy with a higher premium than the amount he had originally quoted. Rains *91 informed Hutton that the new premium for the Perry policy was $57.10. Hutton responded that she wanted to shop around to make sure she was not paying too much for the Perry policy. Rains departed with the Perry policy, telling Hutton to keep her conditional receipt and that he would hold the Perry policy "for her" until she decided what to do. In a statement dated January 29, 2001, Hutton said Rains told her she had twenty days plus a thirty day grace period to decide whether she wanted to accept the Perry policy. In her deposition, Hutton said Rains told her she had "a twenty day reviewing period, and that it was thirty days, and that the premiums were going to be set up on a bank draft to be withdrawn within the middle of each month." She thought that the thirty day period referred to the balance of days left on the conditional receipt.
¶ 7. Rains contradicted Hutton's version of events. According to Rains, he told Hutton that American General had rejected Perry's application due to his driving record and had conditionally issued a new policy providing the same amount of coverage with a higher premium. He never told Hutton that coverage would be in effect for twenty days or for an additional thirty days. When Hutton complained of the higher premium amount, he told her she could obtain less coverage on Perry for a lesser premium amount. Rains felt it inappropriate to give the policy to Hutton unless she paid the difference between the new premium of $57.10 and the $11.90 she had already paid.
¶ 8. On September 26, 2000, Rains presented and Hutton signed a form entitled, "Policyowner Request to Make New Policy Not Taken" (the Not Taken form). American General asserts that this form manifested Hutton's intent to decline coverage. Hutton avers that the form did not operate as her rejection of coverage because she signed it based on Rains's misrepresentation that coverage would continue despite her signature on the form.
¶ 9. The facts surrounding Hutton's execution of the Not Taken form are in dispute. Hutton stated that, on September 26, Rains called her and said he had a form for her to sign. That afternoon, Rains presented Hutton with a form and asked for her signature. Before she signed, Hutton asked Rains if Perry would still be insured if she signed the form, and Rains said, "yes." Further, Rains said he still had the Perry policy and was holding it for Hutton. Rains also told Hutton to keep her receipt and to call him when she had reached a decision about the Perry policy. In her statement of January 29, 2001, Hutton said Rains told her that, if she signed the form, she would still be covered for the remainder of the twenty day period plus a thirty day grace period, and the conditional receipt would serve as her policy.
¶ 10. In contrast, Rains stated that, on or about September 22, Hutton telephoned him and said that she did not want the Perry policy because she had found cheaper coverage for Perry's life. Rains told her she had to sign a form in order to "release" the Perry policy. He denied telling Hutton that coverage would continue after the form was signed. In turn, Hutton denied that she called Rains and declined the Perry policy. She stated that, in fact, she had inquired about cheaper coverage for Perry from two other insurance companies but was unable to find a lower premium.
¶ 11. According to Rains and other American General employees, the purpose of the Not Taken form was to allow the owner of an insurance policy to reject the policy and receive a refund of the premium payment. Rains and the other employees maintained that, in this case, Hutton was not a policy owner, but the form was used *92 anyway in order to expedite Hutton's refund of $11.90.
¶ 12. The Not Taken form had three sections, one to be completed by the local office, one stating that it "must be completed by the policyowner," and one to be completed by the agent. Rains said that, when he presented the form to Hutton, he had already filled in the policy number, Perry's name, and Hutton's name and address. The form was otherwise blank. After Hutton signed the form, Rains completed the rest of the form, including the section that was supposed to be completed by the policy owner. In the policy owner section, Rains wrote that he had delivered the policy on September 6, 2000, that the "customer wanted to consider taking half of coverage," and that Hutton had notified him on September 22, 2000 that she did not want the policy, for the reason that she had "found [a] lesser premium amount with another company." Rains maintained that the information he wrote on the Not Taken form reflected the understanding between himself and Hutton.
¶ 13. Perry died from a gunshot wound at 1:13 a.m. on October 1, 2000. Hutton stated that, two days previously, she had left a message for Rains requesting that he bring the Perry policy to her. Rains denied that Hutton left this message. Rains said that Hutton called him at 6:30 a.m. on the morning of Perry's death and requested that he "bring Keon's policy back out." The next day, Rains, having learned of Perry's death via a media source, called Hutton and asked if Perry had been killed. Hutton denied that Perry had been killed. Rains visited Hutton's residence and learned from Hutton's mother that Perry was dead. On or about October 19, Rains assisted Hutton in filling out a claim form and witnessed Hutton's signature on the form, which was submitted to American General.
¶ 14. American General investigated the claim and took statements from Hutton and Rains. On October 31, American General sent Hutton a letter stating that no policy had been in effect on the date of Perry's death, but that the company was considering the claim under the terms of the conditional receipt. On March 13, 2001, American General denied the claim and refunded Hutton's initial payment of $11.90. Woodrow Thatcher, American General's director of claims, made the final decision to deny the claim. He stated that the decision was made because Hutton had never paid the first full premium, never signed a consent to alter form, and had signed the Not Taken form.

STANDARD OF REVIEW
¶ 15. A party is entitled to summary judgment if the evidentiary matters before the courtpleadings, depositions, answers to interrogatories, admissions on file, affidavits, etc.demonstrate that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party, considering all reasonable, favorable inferences that may be drawn from the record. Burkhalter & Co. v. Wissner, 602 So.2d 835, 838 (Miss.1992). The moving party bears the burden of persuading the court that there is no genuine issue of material fact to be tried. Shaw v. Burchfield, 481 So.2d 247, 252 (Miss.1985).
¶ 16. The mere presence of contradictory evidence in the record does not preclude summary judgment. Rather, for the case to proceed to trial, material facts must be in dispute. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983). "[T]o determine which factual issues are material, we must first examine the substantive law that governs the case, and to *93 determine if an issue of material fact is genuine, we must then decide whether `the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Murphree v. Fed. Ins. Co., 707 So.2d 523, 529 (Miss.1997) (quoting Bache v. Am. Telephone & Telegraph, 840 F.2d 283, 287 (5th Cir.1988)). This Court reviews the grant or denial of a summary judgment motion de novo. Aetna Casualty and Surety Co. v. Berry, 669 So.2d 56, 70 (Miss.1996).

LAW AND ANALYSIS

I. WHETHER GENUINE ISSUES OF MATERIAL FACT EXISTED SUCH THAT THE GRANT OF SUMMARY JUDGMENT TO AMERICAN GENERAL WAS IMPROPER.
¶ 17. For Hutton to recover on her claim that American General failed to pay benefits for Perry's death in bad faith, a contract of insurance must have existed between Hutton and American General. Am. Bankers' Ins. Co. of Fla. v. Wells, 819 So.2d 1196, 1207 (¶ 35) (Miss.2001). Thus, the initial question before this Court is whether, viewing the evidence and inferences drawn therefrom in the light most favorable to Hutton, the evidence could support a finding that an insurance contract existed at the time of Perry's death. American General argues that no contract of temporary insurance arose under the conditional receipt, that Hutton never accepted the Perry policy, and that, even if Hutton accepted the Perry policy, her signature on the Not Taken form was a rejection of the Perry policy within a twenty day rescission period allowed under the policy.
¶ 18. We begin by addressing whether there was any evidence from which a reasonable jury could conclude that temporary coverage under the conditional receipt was in effect at Perry's death. In Mississippi, a conditional receipt is enforceable according to its terms, unless ambiguous. Ford v. Lamar Life Ins. Co., 513 So.2d 880, 886 (Miss.1987). We find no ambiguity in the conditional receipt at issue in this case. The receipt conditioned temporary coverage on (1) the deposit being at least equal to one twelfth of the annual premium for the policy applied for, and (2) the conclusion by American General's Nashville officers that the proposed insured was insurable for the plan, insurance amount, and premium applied for under American General's underwriting rules on the date of the deposit and of any required medical examination. The receipt stated that any temporary coverage in existence would terminate sixty days after the date of the deposit or upon delivery or tender of delivery of the insurance policy, whichever occurred earlier.
¶ 19. Hutton's deposit of $11.90 was equal to one twelfth of the annual premium for the policy applied for, fulfilling the first condition. But, the second condition was unfulfilled. Hutton applied for a term life policy with a premium of $11.90 and a provision for a waiver of premium in the event of disability. The policy which American General issued on Perry had a premium of $57.10 and no provision for waiver of premium for disability. Therefore, the policy was not issued as applied for and no temporary coverage was created by the conditional receipt. Further, even if temporary coverage had existed under the conditional receipt, that coverage would have terminated pursuant to the terms of the receipt upon Rains's delivery or tender of delivery of the Perry policy to Hutton on September 12, 2000, approximately twenty days before Perry's death. Thus, by the terms of the conditional receipt, no temporary coverage was in effect at Perry's death.
*94 ¶ 20. Likewise, there was no evidence supporting the conclusion that coverage was in effect under terms of the Perry policy. The Perry policy stated that the first full premium payment was due on the policy date, and that no grace period applied to extend the time for payment. The policy stated that the "Policy Date" was September 1, 2000. However, the application which Hutton completed and signed gave the applicant thirty-one days in which to pay the first full premium in order to effect coverage as of the policy date. American General admits that, under terms of the Perry policy and application, if Hutton had paid the first full premium within thirty-one days of the policy date, September 1, 2000, American General would have backdated coverage to September 1, 2000. It is undisputed that Hutton never paid the first full premium of $57.10 and, therefore, coverage was never effectuated under the terms of the Perry policy.
¶ 21. In certain circumstances, an insurance agent acting within his actual or apparent authority may modify the terms of an insurance contract. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990). The general law of agency applies to insurers' relationships with their agents. Id. The evidence indicates that Rains lacked actual authority to alter the terms of the conditional receipt or the Perry policy; these documents disclaimed the agent's authority to alter contract terms and there is no evidence that Rains was otherwise so authorized. Therefore, our inquiry shifts to Rains's apparent authority to modify contract terms. "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." Id. The person asserting apparent authority has the burden of proving three elements: (1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance. Id. at 1181. The question of whether the evidence meets the three elements is for the fact-finder. Id. However, if evidence on any of the three elements is missing, summary judgment is appropriate. Barhonovich v. Am. Nat. Ins. Co., 947 F.2d 775, 778 (5th Cir.1991).
¶ 22. In Barhonovich, an insurance agent purposely misrepresented to Barhonovich that the cash value of the policy sufficed to fund monthly premiums and no further premiums were due. Id. at 777. Barhonovich relied upon this representation and ceased paying monthly premiums. Id. In fact, the insurance policy required payment of monthly premiums for the duration of the policy. Id. at 776. When Barhonovich inquired about the value of the policy, he discovered that it had lapsed for nonpayment of premiums. Id. at 777. Barhonovich argued that the agent had made the misrepresentation within his apparent authority and effectively terminated Barhonovich's obligation to pay monthly premiums upon reinstatement of the policy. Id.
¶ 23. Applying Mississippi law, the Fifth Circuit affirmed the grant of summary judgment to the insurer. Id. at 779. The court held that the evidence was insufficient to show that the agent had bound the insurer within his apparent authority. Id. at 778. Firstly, the insurer did not make any representation that would have authorized the agent's misstatements. Id. Secondly, the policy stated that premiums were payable for life and disclaimed the agent's authority to modify the policy, change the time for paying premiums, or *95 waive any forfeiture or the insurer's rights or requirements. Id. The court found that, in the face of the policy requirements, Barhonovich's reliance on the agent's contrary representation was unreasonable. Id. Finally, the court held that Barhonovich had shown no detrimental change in position in reliance on the misrepresentation. Id.
¶ 24. As in Barhonovich, Hutton contends that Rains bound American General to coverage by representations made within his apparent authority. Hutton argues that, when Rains brought the Perry and Hutton policies to her home on September 12, 2000, Rains misrepresented that Perry was covered under the conditional receipt and/or the Perry policy. Hutton avers that Rains told her she had a twenty day review period, an additional thirty days, and that premiums would be "set up" for withdrawal from her bank account in the middle of each month. In her January 2001 statement, Hutton said that Rains gave her twenty days plus a thirty day grace period to decide whether or not to accept the Perry policy, with the conditional receipt serving as her policy in the meantime. If, as she alleges, Hutton believed these representations, the most favorable inference that may be drawn is that, on September 12, 2000, Hutton thought temporary coverage on Perry was in effect for fifty days, within which time she could opt to accept the Perry policy and have monthly premiums withdrawn from her bank account.
¶ 25. A party has a duty to read an insurance contract and knowledge of the contract's terms will be imputed to the party even if she does not read it. Am. Gen. Financial Servs., Inc. v. Griffin, 327 F.Supp.2d 678, 684 (N.D.Miss.2004). In the face of the contract, a party's reliance upon contrary representations by the agent is unreasonable. Barhonovich, 947 F.2d at 778; Am. Income Life Ins. Co. v. Hollins, 830 So.2d 1230, 1238 (¶¶ 20-22) (Miss.2002). Hutton avers that Rains bound American General to coverage by his misrepresentation on September 12, 2000 that Hutton had a total of fifty days of temporary coverage. As discussed above, by the plain terms of the conditional receipt, no temporary coverage was created by the conditional receipt because, due to the higher premium and the absence of the disability waiver of premium, the Perry policy differed from the policy which Hutton applied for. And, even if temporary coverage had existed, it would have terminated upon Rains's delivery or attempted delivery of the Perry policy on September 12, 2000. Since Hutton had a duty to familiarize herself with the terms of the conditional receipt, her reliance on Rains's contrary representations was unreasonable as a matter of law. Barhonovich, 947 F.2d at 778. Therefore, Hutton's claim that Rains bound American General to fifty days of temporary coverage does not meet the second element of apparent authority.
¶ 26. Moreover, the conditional receipt stated that the sales representative lacked authority to change the terms and conditions of the receipt. The first element of apparent authority requires the principal to indicate in some fashion that the agent has the authority he is assumed to have. Andrew Jackson Life Ins. Co., 566 So.2d at 1180-81. Since, with the conditional receipt, American General expressly disclaimed Rains's authority to extend coverage not provided by the terms of the conditional receipt and Hutton had a duty to read the receipt, Hutton's argument does not meet the first element of apparent authority.
¶ 27. Hutton strenuously argues that sufficient evidence existed to support a finding that she accepted the Perry policy *96 on September 12, 2000, such that a permanent life insurance policy was in effect at Perry's death on October 1. She contends that, because Rains did not tell her that she had to pay the first full premium to effectuate coverage and she never had possession of the Perry policy, she could not have known that American General conditioned permanent coverage upon the payment of the first full premium. She argues that Rains bound American General to permanent coverage under his apparent authority to accept a promise to pay the first full premium in lieu of the premium payment. She alternatively argues that her silence constituted an acceptance of the policy.
¶ 28. Hutton's argument that there was evidence that she accepted the policy is belied by Hutton's January 2001 statement, in which Hutton stated that Rains gave her a total of fifty days "to decide whether she wanted to accept Keon's policy." Thus, according to Hutton's own version of the facts, she did not accept the Perry policy on September 12, 2000, and Rains gave her fifty days in which to do so. As discussed above, if Hutton believed Rains's representations, Hutton thought the fifty days comprised a period of temporary insurance coverage, a belief in stark contrast with the terms of the conditional receipt which Hutton had a duty to read. Viewing the evidence in the light most favorable to Hutton, the evidence is insufficient to support a jury finding that Hutton had temporary insurance on Perry or that she accepted the Perry policy.
¶ 29. Since there was insufficient evidence that temporary or permanent coverage ever was effectuated under the terms of the conditional receipt or Perry policy or via Rains's actual or apparent authority, no coverage could have existed when Hutton signed the Not Taken form on September 26, 2000. As there was no extant coverage for Hutton to reject by signing the Not Taken form, we need not address the issue of whether the Not Taken form, as executed, could have effectively operated as a rescission. We find that there was no evidence from which a reasonable jury could conclude that a contract of insurance existed between Hutton and American General and that summary judgment was appropriate on Hutton's claim of bad faith breach of an insurance contract. Hutton also argues that the trial court improperly granted summary judgment to American General on her claim that American General was vicariously liable for Rains's fraudulent misrepresentations under the doctrine of respondeat superior. Under that familiar doctrine, a principal is responsible for the torts of its agent committed within the scope of the agent's employment. Odier v. Sumrall, 353 So.2d 1370, 1372 (Miss.1978). As American General's liability rests upon Rains's conduct, we consider the evidence concerning Rains's liability for fraud.
¶ 30. To establish that Rains's conduct constituted fraud, Hutton must prove by clear and convincing evidence,
(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
¶ 31. Mabus v. St. James Episcopal Church, 884 So.2d 747, 762 (¶ 32) (Miss.2004). Hutton argues that, on September 12, 2000, and September 26, 2000, Rains fraudulently misrepresented to her that she was temporarily insured and fraudulently implied that she had accepted the Perry policy. Reviewing the summary judgment evidence in the light most favorable *97 to Hutton, the evidence fails to present a genuine issue of material fact. Hutton had no right to rely on Rains's misrepresentation that she was temporarily insured because that statement contradicted the language of the conditional receipt, which Hutton had a duty to read. And, Hutton's contention that she relied upon a misrepresentation that she had accepted the Perry policy is unsupported by the evidence; Hutton stated in January 2001 that Rains told her she had fifty days in which to decide whether to accept the Perry policy. Since the evidence does not fulfill the "right to rely" and reliance elements of fraud, American General could not be held liable for Rains's alleged misrepresentations under the doctrine of respondeat superior. We affirm the grant of summary judgment in favor of American General.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT FOR THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Throughout the proceedings, Hutton alternatively referred to Perry as her common law husband or fiancé.