IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2008

Charles R. Fulbruge III
Clerk

No. 08-60126

———

TIA SAUCIER,

Plaintiff-Appellant,

v.

COLDWELL BANKER JOSEPH M. ENDRY REALTY;
CLARA K. PLUMMER,

Defendants-Appellees.

———

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:04-CV-686

———

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Tia Saucier appeals a judgment regarding a suit for breach of contract.
We affirm in part, reverse in part, and remand.

———

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

I.

Saucier is a real estate agent who obtained a Mississippi real estate license in 2002 after working as a real estate agent in Florida.[1] Coldwell Banker Joseph M. Endry Realty ("JME") is a real estate broker in Mississippi that had an agreement to serve as broker for The Legacy Condominiums ("Legacy"), a development in Gulfport, Mississippi. JME signed a contract with Clara Plummer retaining her as a co-listing agent on Legacy, and the two shared commissions from the project.

In April 2003, Plummer interviewed Saucier to become the on-site sales associate for JME at Legacy. After the interview, Saucier signed two agreements with JME saying that she would assist in the sales at Legacy. The agreements were worded in the same fashion as the one between Plummer and JME. Saucier also made an oral contract with Plummer that stated that they would split commissions from JME equally. Saucier resigned in September 2003, claiming Plummer had breached their oral contract.

Saucier sued JME and Plummer alleging misrepresentation, conspiracy, and the breach of three agreements: the two written contracts with JME and an oral contract with Plummer. The district court granted summary judgment for defendants on breach of the first two contracts, leaving for trial only the alleged breach of an oral contract, conspiracy, and misrepresentation.

At trial, Saucier alleged that she and Plummer had formed a "team" for purposes of commissions on Legacy sales and that under that arrangement she was owed money from JME and Plummer. At the trial's conclusion, defendants moved under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law ("j.m.l.") on all claims. The district court granted the motion on the conspir-

---

[1] "In assessing the legal sufficiency of the evidence, we consider the entire trial record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 357 (5th Cir. 2003) (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997)).

acy and misrepresentation grounds, leaving only the breach of contract issue for the jury, which found for Saucier and awarded $410,000. Defendants moved under Federal Rule of Civil Procedure 50(b)[2] for j.m.l. on the oral contract claim or, alternatively, under Federal Rule of Civil Procedure 59 for a new trial. The court asked for information from both sides regarding the evidence that supported the jury's award, then granted JME's Rule 50(b) motion and granted JME a new trial under Rule 59. The court denied Plummer's Rule 50(b) motion and reduced damages to $30,411.51.

## II.

We review a j.m.l. de novo. See Coffel v. Stryer Corp., 284 F.3d 625, 630 (5th Cir. 2002). "A [j.m.l.] is appropriate only where 'there is no legally sufficient basis for a reasonable jury to find for [a] party.'" Arguello, 330 F.3d at 357 (citing FED. R. CIV. P. 50(a)(1)) (second brackets in original). An issue is properly submitted to the jury where there is a conflict in substantial evidence. Id. (citing Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc)). Substantial evidence exists when there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Brown v. Bryan County, 219 F.3d 450, 456 (5th Cir. 2000). It is not this court's or the district court's job to weigh conflicting evidence and inferences or to determine witness credibility;

---

[2] "If the court does not grant a motion for [j.m.l.] made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgmentSSor if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was dischargedSSthe movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." FED. R. CIV. P. 50(b).

that responsibility lies with the jury alone. See Miller v. Butcher Distribs., 89 F.3d 265, 268 (5th Cir. 1996) (citations omitted).

## III.

## A.

Saucier contends the district court erred when it found that there was insufficient evidence that Plummer was acting within the scope of her agency authority when she entered her oral contract with Saucier. Saucier claims that Plummer had apparent authority to bind JME to Saucier and Plummer's oral contracts. Under Mississippi law, "[a]pparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." Hutton v. Am. Gen. Life & Accident Ins. Co., 909 So. 2d 87, 94 (Miss. Ct. App. 2005) (citing Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1180 (Miss. 1990)). "The person asserting apparent authority has the burden of proving three elements: (1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." Id. (citing Williams, 566 So. 2d at 1181).

The district court found that there was not sufficient evidence to meet the "acts or conduct" or "reasonable reliance" requirement. For Saucier to prevail on the first requirement, she would have to show that JME communicated with her about Plummer's authority for binding JME to contracts.[3] Although Saucier cites numerous instances of Plummer's professing her authority to deal on JME's

---

[3] See Barhonovic v. Am. Nat. Ins. Co., 947 F.2d 775, 778 (5th Cir. 1991) (interpreting Mississippi law and finding that apparent authority requires a direct representation from the principal to the third party authorizing the agent's statements).

behalf, the only direct communication between JME and Saucier regarding Plummer is the contract between the two. Saucier alleges that provisions 7 and 9 provided direct notice that Plummer could have authority to bind JME to contracts.

Saucier is mistaken in her reading of the two provisions, which in reality show that JME communicated that agents such as Plummer did not have authority to bind it. Regarding the splitting of commissions, which the oral contract concerned, Provision 7 dictates that commissions would "be divided between the participating Sales Associates according to agreement between them." Thus, the provision removes JME from any promises or disputes regarding commission sharing between brokers.

Provision 9, likewise, states that a "Sales Associate shall have no authority to bind the Broker by any promise or representation, unless specifically approved by manager [sic] in a particular transaction." Provision 9 shows that the contract anticipated problems with agents' binding JME to contracts and ensured that its agents knew that was not allowed.

Because Saucier served as an agent in the same respect as did Plummer, she knew that Plummer could not bind JME. The verdict lacked proper factual basis for finding that JME had communicated to Saucier that Plummer had authority on its behalf. Therefore, that claim's dismissal under Rule 50(b) was proper.

## B.

Saucier alleges that the district court erred in reducing damages from $410,000 to $30,411.51. She claims two mistakes in the reduction: (1) the reduction based on sales that occurred before Saucier quit and (2) the elimination of damages based on sales that occurred after Saucier quit.

A damages assessment is not reversed unless it is clearly erroneous. Ham

Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 462 (5th Cir. 1995) (citation omitted). Uncertainty regarding the exact amount of damages will not prevent recovery. Id. (citing Harrison v. Prather, 435 F.2d 1168, 1174-75 (5th Cir. 1970). The evidence need only lay a foundation on which the trier of fact can form a fair and reasonable assessment of the amount of damages. Mut. Life Ins. Co. v. Estate of Wesson, 517 So. 2d 521, 536 (Miss. 1987) (citation omitted), abrogated on other grounds by Gen. Am. Life Ins. v. McCraw, 963 So. 2d 1111 (Miss. 2007). The nature and cause of damages must be shown with reasonable certainty, however. S.H. Kress & Co. v. Sharp, 126 So. 650, 655 (Miss. 1930). For a breach of contract claim, Mississippi law requires that damages not be based on speculation or conjecture. Kaiser Invs., Inc. v. Linn Agriprises, Inc., 538 So. 2d 409, 415 (Miss. 1989) (citations omitted).

1.

The district court properly reduced damages from sales that occurred while Saucier was employed by JME. Her claim for those damages was based on speculation and conjecture. The evidence consisted of vague testimony from either Saucier or Plummer regarding Plummer's general reputation as a good salesperson or her description as a "technical millionaire." When it came to producing evidence regarding the sales Plummer and Saucier were to have split under the oral contract, there was no documentation provided to support the finding of $410,000.

Saucier argued that the average sales commission, multiplied over all of the units sold at Legacy, would have yielded about $820,000, half of which belong to her. That calculation, however, did not involve the specific numbers from the Legacy sales commissions, which were available. Those documented sales figures, instead of the generalized calculations based on other sales that Saucier made, should have been used to calculate damages. Also, when asked to present

evidence supporting the jury's finding of damages, Saucier neglected to file the requested documentation. With such uncertainty in damages, and nothing but speculation to support the verdict, the court was right to reduce the award.

2.

The district court erred in eliminating damages from sales taking place after Saucier's resignation. Under Mississippi law, consideration is needed for a valid contract. See Marshall Durbin Food Corp. v. Baker, 909 So. 2d 1267, 1273 (Miss. Ct. App. 2005). The district court found that consideration did not exist for all of the sales that took place after Saucier had resigned from JME.

That finding is mistaken. The court in essence split the contract into different parts, finding that Plummer's initial sales were considered part of one contract, and the sales of Plummer after Saucier's departure were part of another. The court recognized consideration for the first contract but not for the second.

Realistically, however, there was only one contract between the two: In exchange for Saucier's moving from Florida to Mississippi and participating in the Legacy project, Plummer would split commissions with her, past, present, and future. That contract contained consideration in the form of Saucier's moving to Mississippi and assisting Plummer with sales while employed. Although Plummer and Saucier dispute the details of the oral contract, the jury's finding of $410,000 in damages reflects its conclusion that the contract must have included the future sales. Because consideration existed for the entire contract, the latter portion of the contract was valid.

Because there was consideration for the oral contract, the elimination of damages on units sold after Saucier's departure was incorrect. On remand, the district court should calculate damages on the units Plummer sold at Legacy following Saucier's departure in the same fashion in which it calculated the dam-

ages on units sold during Saucier's term with JME.

## IV.

For the foregoing reasons, the Rule 50(b) dismissal of damages against JME is AFFIRMED. The reduction of damages on commissions from Legacy units sold during Saucier's time at JME is also AFFIRMED. The elimination of damages based on commissions from sales following Saucier's departure is REVERSED and REMANDED for proceedings consistent with this opinion.