KING, C.J.,
for the Court:
¶ 1. James E. Langham filed suit against property owner Nicholas Behnen under theories of breach of contract, quantum meruit, and unjust enrichment after Lang-ham did not receive payment for the cleaning and clearing of lots owned by Behnen, which were damaged by the destruction of Hurricane Katrina. The Circuit Court of Hancock County granted a directed verdict in favor of Behnen. On appeal, Lang-ham argues the following issues: (1) whether the circuit court, on a motion for a directed verdict, erred in dismissing claims against Behnen, due to the misapplication of the law regarding agency; (2) whether the circuit court erred in granting Beh-nen’s motion for a directed verdict, when the clearly established law regarding agency creates questions of fact for the jury’s consideration, not questions of law; and (3) whether the circuit court, on a motion for a directed verdict, erred in dismissing Lang-ham’s claims of unjust enrichment or quantum meruit, when issues of fact existed for the jury’s consideration. Finding no error, we affirm the judgment of the circuit court.
FACTS
¶ 2. On September 1, 2005, after Hurricane Katrina hit the Mississippi Gulf Coast, Langham, a machine operator and welder from Thompson, Georgia, came to Mississippi to assist coastal residents and property owners with cleanup efforts. After Langham arrived in Mississippi, he and a colleague drove around, visiting and talking with individuals in the area to determine how they could obtain work and assist in the community’s cleanup efforts. At some point during his two-day visit, Langham met and spoke with Jennifer Culpepper, who at that time worked at the Diamondhead Property Owners Association, Membership Division and who previously had owned a landscape business providing yard-maintenance work for several members of the Diamondhead community.
¶ 3. With the understanding that there was much work available, Langham returned to Georgia, but he came back to the Mississippi Gulf Coast around September 11, 2005, with various pieces of heavy machinery and equipment to be used in cleaning and clearing lots for residents. Upon his return, Langham remained in the area from approximately September 2005 to May 2006. During this time, he rented a house from Culpepper, who often assisted Langham with his billing and payroll. Because of the work he had previously performed for her and other residents in the area, Culpepper often referred Langham to members of the Diamondhead community to have land clearing and cleanup done. According to Langham, Culpepper would give him the name and number of a property owner, who he would then contact. Generally, the resident would allow Lang-ham to perform the work without any problems concerning payment after the work had been completed.
¶ 4. This matter started with complaints that Culpepper received from Diamond-head residents about damaged trees or property owned by Behnen, which posed a danger. After receiving numerous com *973 plaints from residents in the area regarding the damaged trees, Culpepper requested Langham’s assistance in resolving the matter. Langham agreed to perform the work upon approval from the landowner. Culpepper previously had performed work for Behnen, with whom she maintained a good working relationship. She contacted Behnen and explained the devastation in the area and the need to have the trees cleared and removed. Culpepper testified that she told Behnen that she knew someone who could perform the work for him. Culpepper stated that after discussing the matter with Behnen, it was her understanding that Langham could perform the work on Behnen’s property. Culpepper also testified that Behnen gave his e-mail address to her in order to forward invoices. After Culpepper received what she understood as permission to proceed with the work, she and Langham visited the lots, and Langham proceeded to clear and clean the lots owned by Behnen. However, Behnen testified that he told Culpepper he would look into the matter and get back with her, but according to Behnen, he never did.
¶ 5. Culpepper testified that after Lang-ham completed the work on a lot, she would go out and inspect the lot. Culpep-per testified that as a courtesy to Lang-ham, she twice e-mailed invoices to Beh-nen, but she received no response from Behnen. Culpepper stated that on December 18, 2005, she sent a package via Federal Express to Behnen, which included before and after pictures of his lots. Langham testified that he started clearing Behnen’s lots in November 2005, prior to the Thanksgiving holiday and worked until December 18, 2005. In December 2005, a few days prior to Christmas, not having received a payment from Behnen, Lang-ham asked Culpepper for Behnen’s contact information. Langham contacted Behnen and inquired about the amount owed to him for clearing Behnen’s lots. Langham testified that Behnen stated that he could not pay him and that he would discuss the matter with Culpepper. Langham claimed that when he returned to Mississippi after Christmas, he again spoke with Culpepper, who stated that she put in another call to Behnen and that he was planning to come to Mississippi on or around January 20, 2006. Langham testified that about February 1, 2006, after Behnen did not come to Mississippi, he contacted him again by phone in order to reach an agreement. Langham stated that they were unable to reach an agreement. Behnen then sent an agent, Kevin Knipple, on his behalf to discuss the matter. Although Knipple came to Mississippi to resolve the matter, Knip-ple did not meet with Langham; instead, Knipple spoke with Langham by phone. Again, no agreement was reached.
¶ 6. On April 21, 2006, Langham filed a complaint against Behnen on theories of breach of contract, quantum meruit, and unjust enrichment, claiming that Behnen owed him approximately $50,000 for clearing trees and cleaning eleven lots owned by Behnen. Behnen filed an answer and counterclaim on May 22, 2006, alleging abuse of process and malicious prosecution. Behnen also asked that Langham be held in contempt and that sanctions be imposed pursuant to Rule 11 of the Mississippi Rules of Civil Procedure. On February 5, 2009, the case went to trial. On February 6, 2009, after the close of Lang-ham’s case-in-chief, Behnen moved for a directed verdict. On February 10, 2009, the trial court entered a judgment granting a directed verdict in favor of Behnen. Langham appeals from that judgment.
STANDARD OF REVIEW
¶ 7. A motion for a directed verdict challenges the legal sufficiency of the evidence. Barfield v. State, 22 So.3d 1175, 1185 (¶ 34) *974 (Miss.2009). The applicable standard of review for a directed verdict is de novo. Gray v. BellSouth Telecomm. Inc., 11 So.3d 1269, 1271 (¶ 9) (Miss.Ct.App.2009). “When deciding whether the granting of a motion for a directed verdict was proper by the lower court, this Court considers the evidence in the light most favorable to the non-moving party and gives that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial.” Abrams v. Boggs, 914 So.2d 788, 740 (¶ 7) (Miss.Ct.App.2005) (citing Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992)). “If the favorable inferences have been reasonably drawn in favor of the non-moving party so as to create a question of fact from which reasonable minds could differ, then the motion for a .directed verdict should not be granted and the matter should be given to the jury.” Id.
DISCUSSION
¶8. The core issue of this case is whether the circuit court misapplied the law of agency and, therefore, erred in granting Behnen’s motion for a directed verdict. The circuit court found that Langham had failed to meet the burden of proof for the legal theories set forth in the complaint and, thus, granted Behnen’s motion for a directed verdict. Langham filed a complaint upon theories of breach of contract, unjust enrichment, and quantum meruit. The circuit court opined that Langham did make an offer to perform work for a certain amount for each lot; instead, Langham’s offer was communicated to Culpepper, who then communicated with the landowner. The circuit judge stated that there was no proof of any kind that Culpepper was an agent for Behnen; however, if there was any agency, Culpep-per was Langham’s agent, not Behnen’s. The circuit judge stated that there was no evidence that Behnen ever acknowledged that he was responsible for the payment for the work done; in fact, Behnen ignored the bills sent to him. The circuit judge acknowledged that Langham had performed some work on the lots, but he expressed doubt as to how much work was done. The circuit court opined that although the amount of work might be a jury issue, the problem is that there was no contract or written agreement as to what work Langham was to do.
I. Agency Theory
¶ 9. Langham asserts that the oral contract was specifically stated and entered into by and between Langham and Beh-nen’s agent, Culpepper. Langham contends that there was no issue at trial that an agreement had been reached to clear and clean the lots, but rather, Behnen merely disputed that Culpepper was his agent. Langham argues that Culpepper was an agent for Behnen, because the offer was communicated by Culpepper and Culpepper was authorized to accept the offer. Langham claims that Behnen’s statement “to go ahead” and the fact Beh-nen gave Culpepper his e-mail address in order to send him the bills for the work performed was authorization to have Langham clear and clean his eleven lots at a rate of $4,500 per lot. Langham asserts that Behnen neither denied that Culpepper was authorized to make the agreement on his behalf since he was not in the area nor did he question whether the work had been performed. In addition, Langham claims that the fact Culpepper had performed maintenance work on Behnen’s properties prior to Hurricane Katrina was further evidence that Culpepper was Beh-nen’s agent.
¶ 10. Under the law of agency, “a principal is bound by the actions of its agent within the scope of that agent’s real *975 or apparent authority.” Ford v. Lamar Life Ins. Co., 513 So.2d 880, 888 (Miss.1987). An agent’s authority may be actual or apparent. Barnes, Broom, Dallas and McLeod, PLLC v. Estate of Cappaert, 991 So.2d 1209, 1211 (¶ 9) (Miss.2008). “If an agent had apparent authority to bind his or her principal, then the issue of actual authority need not be reached.” Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990). “Apparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have.” Id. To establish apparent authority, one must prove “(1) acts or conduct on the part of the principal indicating the agent’s authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance.” Hutton v. Am. Gen. Life & Acc. Ins. Co., 909 So.2d 87, 94 (¶ 21) (Miss.Ct.App.2005).
¶ 11. In this case, there is no indication that Culpepper had actual or apparent authority to act on behalf of Behnen. The record does not indicate Behnen gave Cul-pepper the authority to have Langham clear and clean his lots. Culpepper testified that when she contacted Behnen, she informed him of the need to have dangerous hanging trees removed, and Culpepper offered her assistance. Behnen asked Cul-pepper to look into the matter, but there is no indication that he gave Culpepper authority to act on his behalf. There is nothing in the record to indicate that Cul-pepper informed Behnen of any details regarding the price per lot, the amount of time required to complete the removal, or the extent of work required to clean the lots. Behnen testified that the only oral agreement he had with Culpepper was that she was responsible for the upkeep and maintenance on his lawn for which she charged him $100 per month. The record is void of any indication that Behnen reasonably relied on Culpepper to have the work done.
II. Quantum Meruit and Unjust Enrichment
¶ 12. Langham asserts that on the first day of trial at the close of his case-in-chief, the circuit judge indicated to all the parties that he would let these issues go to the jury; however, the next morning the circuit judge made a conflicting ruling and granted a directed verdict in favor of Beh-nen. Langham argues that such a ruling was made without any further, evidence being introduced and only after the circuit court insisted that the. parties settle the case. Langham contends that the clearing and cleanup of damaged and dangerous trees from the eleven lots owned by Beh-nen was incontrovertibly established by testimony at trial; thus, a jury question existed. Langham argues that the judge’s ruling that there was a lack of evidence as to the amount of damages indicates that the court ignored the evidence established as to the cost and value Behnen received.
 ¶ 13. “Quantum-meruit recovery is a contract remedy which may be premised either on express or ‘implied’ contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant’s reasonable expectation of compensation.” Tupelo Redevelopment Agency v. Gray Corp., Inc., 972 So.2d 495, 514 (¶ 56) (Miss.2007). “The essential elements of recovery under a quantum meruit claim are: ‘(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as *976 reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.’ ” Id. at 514-15.
¶ 14. “An unjust-enrichment action is based on a promise, which is implied in law, that one will pay a person what he is entitled to according to ‘equity and good conscience.’” 1704 21st Avenue, Ltd. v. City of Gulfport, 988 So.2d 412, 416 (¶ 10) (Miss.Ct.App.2008). “Thus, the action is based on the equitable principle ‘that a person shall not be allowed to enrich himself unjustly at the expense of another.’ ” Id. “Unjust enrichment only applies to situations where there is no legal contract and ‘the person sought to be charged is in possession of money or property which in good conscience and justice hie should not retain but should deliver to another.’ ” Powell v. Campbell, 912 So.2d 978, 982 (¶ 14) (Miss.2005).
¶ 15. We find that Langham’s contention that an oral contract was made between himself and Behnen through Beh-nen’s agent, Culpepper, is without merit. In this case there was no legal contract, oral or written. The record does not indicate that Culpepper acted as an agent for Behnen, actual or apparent. Culpepper testified during her deposition she told Langham that Behnen seemed positive and felt that she had his permission to go ahead and see what was going to be needed for the lots. However, at trial when questioned as to her conversation with Behnen, Culpepper stated that Behnen told her to go ahead and look into it. Culpepper, interpreted that to mean that Langham could proceed with clearing and cleaning the lots. However, Behnen testified that he told Culpepper that he would look into it and get back with her, but he never did, and she never contacted him again. Behnen stated that he learned that work had been done only after Langham called him inquiring about payment.
¶ 16. The record indicates that Lang-ham performed cleanup services on lots belonging to Behnen. However, the record does not indicate that Langham cleared or cleaned all eleven lots. Todd Langlinais, who is the owner of Total Land Preparation, Inc, and performed tree-removal and land-clearing services also during the cleanup after Hurricane Katrina, testified as an expert that the amount of $4,500 was reasonable for the work that Langham had performed. However, there is no indication that Langham acted in good faith in performing these services and charging a reasonable amount. Lang-ham testified that on other occasions Cul-pepper would give him the name and number of a property owner, and he would contact the property owner directly. However, that was not the case with Beh-nen. In this case, Culpepper did not initially give Langham Behnen’s contact information; she contacted Behnen herself and informed him of the need to clear the trees on the lot and offered her assistance in resolving the matter. The record also indicates that Behnen was not aware.that Langham had performed services on his lots until Langham contacted Behnen after Christmas of 2005. Unjust enrichment is not applicable in this case because there is no indication that Behnen misled Langham and unjustly enriched himself at Lang-ham’s expense.
¶ 17. We find that the evidence supports the trial court’s findings that Culpep-per was not an agent for Behnen, nor was Culpepper acting with actual or apparent authority to permit Langham to clear and clean Behnen’s lots.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS *977 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., NOT PARTICIPATING.