# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01007-COA

| | |
|---|---|
| **SKL INVESTMENTS, INC.** | **APPELLANT** |
| v. | |
| **NATALIE T. HARDIN AND LESLIE B. TORRENCE** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/2013 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID MARK SLOCUM JR. |
| ATTORNEY FOR APPELLEES: | GEORGE STOUTON HAYMANS IV |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | GRANTED DISMISSAL WITH PREJUDICE |
| DISPOSITION: | AFFIRMED - 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     SKL Investments Inc. (SKL), a company that buys property at tax sales, purchased property owned by Natalie Hardin and Leslie Torrence at a tax sale. SKL made substantial improvements to the house situated on the property before the tax sale was voided because of a defect in the notice procedure. SKL later filed a complaint against Natalie and Leslie, in the Lafayette County Chancery Court, claiming unjust enrichment and seeking reimbursement for the improvements made to the house. During trial, after SKL rested its case, Natalie and Leslie made an ore tenus motion for dismissal of SKL's claim. The

chancery court granted the motion, and SKL appeals.

¶2.     Finding no error, we affirm.

FACTS

¶3.     Sisters, Natalie and Leslie, inherited a parcel of improved land in Oxford, Lafayette County, Mississippi.[1]  On August 27, 2007, after Natalie and Leslie failed to pay the 2006 taxes assessed to the property, the property was sold by the tax collector for the City of Oxford to SKL at a tax sale.  About a year later, on or about August 25, 2008, after some discussion with Natalie and Leslie, Lelon Davidson, Natalie and Leslie's former neighbor and close family friend, purchased the property by paying the 2007 and 2008 taxes owed to the City of Oxford and to Lafayette County.

¶4.     SKL received the tax deed to the property from the city clerk on May 10, 2010.  On May 11, 2010, SKL issued a check to the chancery clerk as payment for delinquent county taxes on the property.  That check was never deposited by the chancery clerk, and there is no evidence that the payment was ever deducted from SKL's account.  In June 2010, SKL began making improvements to the house, and according to SKL, SKL made approximately $114,000 in improvements.  While improvements were being made, Lelon informed Susan Prisock, the owner of SKL, that he had purchased the property, and that he believed he owned it.  On September 2, 2010, the chancery clerk issued a tax deed to Lelon, and that deed was recorded in the office of the chancery clerk.

---

[1] The sisters inherited the property from their father, and they were raised in the house situated on the property.

¶5.     Despite having purchased the property two years prior, SKL did not file a petition to quiet and confirm title until September 7, 2010. That petition named Natalie and Leslie as defendants. SKL later filed a second petition naming Natalie, Leslie, and Lelon as defendants. The chancery court consolidated the two cases, and the case proceeded to trial. Before trial, the parties stipulated that both SKL's and Lelon's tax deeds were void, and SKL proceeded against Natalie and Leslie solely on a claim of unjust enrichment, seeking reimbursement for the improvements made to the house.

¶6.     During trial, Ashley Atkinson, a deputy clerk with the Oxford city clerk's office, testified that in February 2010, she informed Melanie Prisock, an employee with SKL, that there may have been issues with SKL's ownership interest in the property. Ashley stated that she informed Melanie that if someone purchased the property at the county tax sale, SKL would have only a lien on the property. Ashley also testified that she informed Melanie that the adequacy of the statutory notices required for tax sales are common issues with tax sales and that SKL should seek the advice of an attorney.

¶7.     Susan testified that prior to making improvements to the house, she asked Lelon if he could contact Natalie and Leslie to inquire as to whether either Natalie or Leslie desired to purchase the property from SKL. Susan stated that, unable to locate a potential buyer, she decided to make improvements to the house so that she could get a return on her investment. Susan admitted that she did not speak with Natalie or Leslie before SKL began making improvements to the house because although Lelon attempted to "put [her] in touch" with Natalie and Leslie, the sisters never returned her calls.

3

¶8. Upon being questioned by the chancery court regarding another case involving SKL, *SKL Investments Inc. v. American General Finance Inc.*, 22 So. 3d 1247 (Miss. Ct. App. 2009),[2] Susan stated that based on what happened in that case, she was aware that a tax deed could be set aside as void. When asked why she continued to make improvements to the house knowing that SKL's tax deed could possibly be set aside at a later date, Susan stated that she believed SKL had a senior legal interest in the property and that she wanted to protect her investment.

¶9. Natalie testified that she never received any information from SKL regarding the tax sale, SKL's desire to sell the property to her, or the improvements made to the house. Natalie also testified that to her knowledge, Leslie, who did not testify, had not received any such information either. In his testimony, Lelon stated that he spoke with Susan in 2010, and that he informed Susan that SKL did not own the property.

¶10. Throughout the presentation of SKL's case, the chancery court questioned witnesses and posed questions to the parties' attorneys. After SKL rested its case, Natalie and Leslie moved ore tenus for dismissal of SKL's unjust-enrichment claim, arguing: (1) that SKL had failed to meet its burden of proving unjust enrichment; (2) that SKL had unreasonably made improvements to the house in bad faith while knowing that SKL did not have a valid legal

---

[2] Before the complaint in the instant case was filed, SKL had been a defendant in *American General Finance*, a case in which the Chancery Court of Prentiss County found that American General Finance Inc. (AGF), a lienholder, had not received proper statutory notice of a tax sale in which SKL purchased property owned by Genise Roland. *Id*. at 1248 (¶1). In that case, this Court found that because AGF had not received proper notice, the tax sale was void. *Id*. at 1250 (¶6).

interest in the property; and (3) that the improvements had not been authorized by Natalie or Leslie or by law. SKL responded, arguing: (1) that the improvements had been made in good faith; (2) that SKL had colorable title to the property when it made the improvements to the house; and (3) that it would be unjust to allow Natalie and Leslie to reap the benefits of the improvements made to the house without reimbursing SKL for the value of the improvements.

¶11. By order filed June 6, 2013, the chancery court found that SKL had not met its burden of proving unjust enrichment and dismissed SKL's claim with prejudice. On appeal, SKL argues that the chancery court erred by granting Natalie and Leslie's "motion for a directed verdict," and that the chancery court abused its discretion by questioning witnesses.

## DISCUSSION

*I. Motion for Dismissal*

¶12. "[T]he appropriate motion in a case tried without a jury is not a motion for [a] directed verdict, but involuntary dismissal, pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure." *Gulfport-Biloxi Reg'l Airport Auth. v. Montclair Travel Agency Inc.*, 937 So. 2d 1000, 1004 (¶13) (Miss. Ct. App. 2006). "When reviewing a dismissal under . . . Rule . . . 41(b), we will not overturn the decision of [the chancery court] if [its] findings are supported by substantial evidence unless [the chancery court] abused [its] discretion, was manifestly wrong, or applied an erroneous legal standard." *Jones v. Jones*, 101 So. 3d 731, 732 (¶4) (Miss. Ct. App. 2012) (citation omitted).

¶13. "'Unjust enrichment' is a 'modern designation for the doctrine of quasi-contracts.'

5

The basis for an action for 'unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto [that] which in equity and good conscience is his." *Bradley v. Kelly Bros. Contractors Inc.*, 117 So. 3d 331, 338 (¶28) (Miss. Ct. App. 2013) (citation omitted). Stated differently, "[u]njust enrichment only applies to situations where: [(1)] there is no legal contract and [(2)] 'the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another.'" *Langham v. Behnen*, 39 So. 3d 970, 976 (¶14) (Miss. Ct. App. 2010) (citation omitted).

¶14.    In *Langham,* the plaintiff was a machine operator and welder from Georgia who relocated to Mississippi to assist in cleanup efforts after Hurricane Katrina devastated the Mississippi Gulf Coast. *Id*. at 972 (¶2). The plaintiff received several complaints from neighborhood residents regarding trees and debris on the defendant's property that needed to be cleared. *Id*. at 972-73 (¶4). The plaintiff agreed to perform the work after being informed by a third party that the defendant had agreed to pay the plaintiff for his services. *Id*. However, after the work had been completed, the defendant refused to pay the plaintiff, who eventually filed suit against the defendant, claiming unjust enrichment. *Id*. at 973 (¶¶5-6). On appeal, this Court found that the plaintiff was not entitled to recover under a theory of unjust enrichment because "there was no legal contract, oral or written[, and] [t]he record [did] not indicate that [the third party had] acted as an agent for [the defendant,] actual or apparent." *Id*. at 976 (¶15).

¶15.    Likewise, in this case, the evidence reveals that there is no contract between SKL and

6

Natalie and Leslie. Nor is there any evidence that anyone, acting on Natalie and Leslie's behalf, authorized SKL to make the improvements. After review, we find that the chancery court's dismissal of SKL's claim was supported by substantial evidence and was not an abuse of discretion. This issue is without merit.

II.     The Court's Questioning of Witnesses

¶16.    SKL argues that the chancery court "continually mischaracterized testimony [and] interrupted and veraciously 'crossed' [SKL's] witnesses while protecting other witnesses in a manner that hindered [SKL's] development of its case[.]" While the record reveals that the chancery court interrogated witnesses and even sometimes interrupted witnesses as they testified, a contextual reading of the record also reveals that the chancery court did not "overstep[ ] its judicial authority" as SKL now claims.

¶17.    The chancery court was within its right to "interrogate witnesses, whether called by itself or by a party." *Powell v. Ayars*, 792 So. 2d 240, 248 (¶29) (Miss. 2001); *see also* M.R.E. 614(b). Certainly, it would have been "'grounds for reversal if the [chancery court had] abuse[d] the authority to call or question a witness[,] abandoning [its] impartial position as a judge and assuming an adversarial role.'" *Copeland v. Copeland*, 904 So. 2d 1066, 1074 (¶27) (Miss. 2004) (citing *Powell,* 792 So. 2d at 248 (¶29)). However, "there [was] no requirement for the [chancery court] solely to be a silent observer." *Copeland*, 904 So. 2d at 1074 (¶28) (citation omitted). After reviewing the record, we find that the chancery court did not abuse its discretion in its examination of the witnesses. This issue is without merit. Accordingly, we affirm.

¶18.     **THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  GRIFFIS, P.J., NOT PARTICIPATING.**